IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| RICHARD ENGLAND, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:21-cv-19 ) |
| JACKSON COUNTY PUBLIC LIBRARY, | ) ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Introductory Statement**

1. Richard England has frequented the Seymour branch of the Jackson County Public Library, oftentimes more than once a week, for years. During a visit to the library in November 2020, he left an original poem critical of then-President Trump at the library's circulation desk. On the basis of this expressive activity, he has been banned by the Jackson County Public Library from the library's property. This ban violates the First Amendment to the United States Constitution. Insofar as he was not afforded notice and an opportunity to be heard prior to the issuance of the ban, it also violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Mr. England is entitled to prompt injunctive relief permitting him to return to library property.

**Jurisdiction, Venue, and Cause of Action**

2. The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

1

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

6. Richard England is an adult resident of Jackson County, Indiana.

7. The Jackson County Public Library is the governmental entity that operates public libraries in Jackson County, Indiana.

**Factual Allegations**

8. Richard England is an adult resident of Jackson County, Indiana, where he lives a short distance outside of the City of Seymour.

9. Mr. England is sixty-eight years old. He lives alone and his sole source of income is approximately $800.00 each month in assistance through the supplemental security income (SSI) program. Due to Mr. England's limited income, he is not able to afford cable television, internet service, or other forms of paid entertainment.

10. In lieu of paid entertainment, prior to the events giving rise to this litigation Mr. England frequented the Seymour branch of the Jackson County Public Library ("the Library") approximately twice a week, which he had done for a decade or more. During these visits he would check out books, movies, and music, which he would then return at subsequent visits. Due to his frequent visits, he also maintained a friendly relationship with several employees of the Library and he would converse with these individuals while he was checking out or returning materials.

11. At the time that he checked out materials from the Library, the Library would produce a "receipt," which contained the due-date(s) by which materials must be returned and that also informed him how much money he "saved" by checking out materials from the Library

        instead of purchasing the same items separately. A "receipt" that Mr. England received in mid-November of 2020 indicated that, during the course of thirteen visits to the Library from October 5th through November 16th, he saved "a total of $2,471.68."

12. On or about November 16, 2020, Mr. England visited the Seymour branch of the Library. After returning several items that he had previously checked out, he found several new DVDs to check out and returned to the circulation desk to check out these items.

13. On this occasion, he had brought with him an original poem that he had written titled "The Red Mean." This poem was forty-three words long and, while it was critical of then-President Trump and his followers, it was not vulgar, threatening, obscene, or otherwise inappropriate. Mr. England had intended to give this poem to a library employee with whom he was friendly, as he believed that this employee would enjoy the poem. However, that employee was not present at the time.

14. While he was checking out, Mr. England therefore left his poem in a basket on the circulation desk, which contained masks for customers to take if they needed one. He did so in order to share his political opinions with library staff and members of the community, and he believed that leaving the poem in the basket containing masks was appropriate given that, in his opinion, the wearing of masks during the COVID-19 pandemic had inappropriately become a politicized issue whereas he believed that masks represented a rudimentary public-health measure. At the time that he left his poem, Mr. England certainly understood that library staff might choose to move the poem or to discard it entirely, although he felt that his message was worth sharing even if it only reached a person or two. A true and correct copy of the poem that he left at the circulation desk is attached and incorporated herein as Exhibit 1.

15. Mr. England then left the library without incident.

16. Immediately upon returning home, Mr. England was surprised to discover that he had a voicemail from a police officer with the Seymour Police Department waiting for him. This officer informed Mr. England that he was banned from the Library for the rest of his life and that, if he returned to the Library, he would be arrested for criminal trespass. Mr. England then travelled to the headquarters of the Seymour Police Department and spoke with the police officer who had left this message. He was informed that the Library had banned him from its property and was informed again that he would be arrested if he entered the Library ever again.

17. Mr. England then returned home and called the Seymour branch of the Library. He spoke first with an employee at the circulation desk and then with the Circulation Manager, who informed him that "We don't do politics at the library." The Circulation Manager reiterated to Mr. England that he was banned from the Library and that Library staff had already spoken with the Library's attorney and been assured that they could take this action against him.

18. Notwithstanding the statement of the Circulation Manager that "We don't do politics at the library," Mr. England has frequently observed patrons of the Library wearing clothing or buttons with political messages and has observed patrons engaging in political conversations with each other and with Library staff. He had also previously engaged in friendly political conversations with Library staff in the past.

19. Mr. England was banned from the Library due exclusively to his expressive activity. There was no adequate justification for this ban.

20. Mr. England's ban from the Library impacts his right to receive information. This ban is

not tailored to advance any interest of the Library and does leave open ample alternatives for Mr. England to receive information.

21. Mr. England possesses a liberty interest in entering Library property during times when it is open to the public. Nonetheless, he was not afforded any written notice concerning his ban from the Library—to this date he has received nothing in writing—nor was he afforded a hearing or any other opportunity to dispute this ban.

22. The Library operates two other branches in addition to its Seymour branch: one in Medora and the other in Crothersville. Mr. England understands his ban from the Library to apply to all three branches, and he has therefore not visited any of the Library's branches since learning that he was banned from the Library with the exception of returning previously checked-out materials as directed by the Library's Circulation Manager. Even if his ban only applied to the Seymour branch, however, the other two branches of the Library are far smaller, contain a more limited amount of materials, and are only open approximately twelve hours each week. They are also much further away from Mr. England's home than is the Seymour branch.

23. In addition, a public library exists in Brownstown, Indiana that Mr. England has visited on occasion. He is uncertain as to whether the Library operates this public library as well or whether this public library is operated by the Town of Brownstown. In any event, the public library in Brownstown is smaller than the Seymour branch of the Library, contains a more limited amount of materials, and is also much further away from Mr. England's home.

24. Since his ban from the Library, Mr. England has on occasion visited the Bartholomew County Public Library in Columbus, Indiana in order to check out materials. However,

        that library is approximately twenty miles from his home and he is not able to travel to the Bartholomew County Public Library as frequently as he previously visited the Seymour branch of the Library.

25. Mr. England wishes to return to the Seymour branch of the Library but is unable to do so as a result of his ban from the Library and the threat of prosecution for criminal trespass. He understands that, due to the COVID-19 pandemic, the Library might be currently open for curbside pick-up and drop-off only, and he would like to make use of these services to check out and return materials. Even though he cannot enter the Library itself, curbside pick-up and drop-off also requires that he enter Library property and he is therefore prohibited from making use of these services.

26. As a result of the actions of the defendant, Mr. England is suffering irreparable harm for which there is no adequate remedy at law.

27. The defendant has, at all times, acted or refused to act under color of state law.

**Legal Claims**

28. Mr. England's ban from the Library violates the First Amendment to the United States Constitution.

29. The failure of the Library to offer Mr. England notice and an opportunity to be heard prior to banning him from the Library violates the Fourteenth Amendment to the United States Constitution.

**Request for Relief**

        **WHEREFORE,** the plaintiff requests that this Court:

1. Accept jurisdiction of this cause and set it for hearing at the earliest opportunity.

2. Declare that the defendant has violated and is violating the rights of the plaintiff for the

reasons described above.

3. Issue a preliminary injunction, later to be made permanent, prohibiting the Library from enforcing or attempting to enforce its ban against the plaintiff and requiring the Library to permit the plaintiff to return to Library property.

4. Award the plaintiff his costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

5. Award all other proper relief.

Gavin M. Rose
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
grose@aclu-in.org

*Attorney for the plaintiff*